# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ERRICK PHILLIPS,** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **NO. 08-1388** |
| | : | |
| **TONY ALSLEBEN, et al.,** | : | |
| **Defendants** | : | |

## M E M O R A N D U M

**STENGEL, J.**                                                    **March 7, 2011**

Errick Phillips filed a Section 1983 action against the officers who arrested him on October 23, 2006. He alleged violations of his First, Fourth, Eighth, and Fourteenth Amendment rights; malicious prosecution; fraud; conspiracy; gross negligence; racial profiling; racial discrimination; and cruel and unusual punishment. After this Court denied Mr. Phillips's motion for summary judgment, his case proceeded to a non-jury trial which took place on January 13 and 14, 2011. On the basis of the evidence and testimony presented, the court makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1.      On October 23, 2006, between 9:00 a.m. and 9:30 a.m., Officer Tony Alsleben of the Allentown Police Department responded to the area of 20th and Allen Streets to investigate a complaint by Chris Gabellini – whom Officer Alsleben knew as a member of the neighborhood crime watch – that a suspicious looking male was

walking back and forth in front of Gabellini's store and looking into its window for about an hour.

2.     Mr. Gabellini reported that the first male was joined by a second male in looking into a neighbor's vehicle parked on the street.

3.     Mr. Gabellini described the first individual as a male wearing a brown hooded jacket with the hood pulled up over his face, blue jeans, and white sneakers.

4.     When Officer Alsleben arrived on the scene, he noticed three individuals standing by a burgundy vehicle.

5.     Officer Alsleben recognized Plaintiff Errick Phillips from the description given by Mr. Gabellini.

6.     After Officer Alsleben parked his patrol vehicle behind the burgundy vehicle and got out, Mr. Phillips began to walk away.

7.     Officer Alsleben observed that Mr. Phillips was holding an object with a cord but could not identify the object.

8.     Although Officer Alsleben told Mr. Phillips to "stop," he did not obey this direction.

9.     Mr. Phillips picked up his pace, eventually breaking into a run with Officer Alsleben in pursuit.

10.    While he was running, Mr. Phillips repeatedly stated "I didn't do anything wrong."

11.    While he was running, Mr. Phillips also began removing the brown jacket he was

wearing, eventually discarding it.

12. Officer Alsleben pursued Mr. Phillips, but lost sight of him.

13. Officer Alsleben eventually observed Mr. Phillips, who was wearing a white tee shirt, walking across Allen Street.

14. When Mr. Phillips saw Officer Alsleben, he again began running North on Lafayette Street away from Officer Alsleben.

15. Several other officers arrived to assist Officer Alsleben in his pursuit of Mr. Phillips.

16. Deputy Sheriff Eric Kester of the Lehigh County Sheriff's Office, who was in the vicinity with a partner, heard the radio dispatches concerning the incident and arrived at the scene to assist in apprehending Mr. Phillips.

17. Deputy Kester searched the back yards off Page Street, an alley North of Allen Street, and discovered Mr. Phillips hiding under a car parked behind one of the homes.

18. Despite numerous verbal commands from Deputy Kester for Mr. Phillips to show his hands, Mr. Phillips refused to comply and again attempted to flee.

19. Deputy Kester grabbed Mr. Phillips's shirt, but Mr. Phillips continued to run and pulled Deputy Kester over the hood of a car.

20. Mr. Phillips also began flailing his fists in an attempt to get away from Deputy Kester.

21. Mr. Phillips punched Deputy Kester numerous times in the arm in order to break Kester's grip.

22. Mr. Phillips's contact with Deputy Kester's arm resulted in bruising and pain to that arm.

23. Officer Alsleben observed Deputy Kester holding Mr. Phillips's shirt in an attempt to stop him from running away, and saw Mr. Phillips resisting Kester's efforts to arrest him by swinging closed fists at and punching Kester.

24. Deputy Kester grabbed Mr. Phillips's right arm in an attempt to prevent him from escaping.

25. Officer Alsleben arrived and grabbed Mr. Phillips's free arm to stop him from punching Deputy Kester.

26. Immediately after Officer Alsleben grabbed Mr. Phillips's arm, other officers arrived to assist in apprehending him.

27. Officer Alsleben and the other officers attempted to subdue Mr. Phillips, but he continued to struggle and tried to pull away, causing everyone to fall to the ground.

28. Before being taken to the ground, Officer Kevin Kennedy was twice struck in the face by Mr. Phillips's elbow on the backswing of Mr. Phillips's flailing arms.

29. While on the ground, Mr. Phillips repeatedly threw elbows and kicked his legs in an attempt to escape from the officers.

30. The officers eventually were able to pull Mr. Phillips's arms behind him and

handcuff his hands behind his back.

31. In addition to the bruises to his arms, Deputy Kester sustained injuries to his hands and his left knee as a result of the fall to the ground and ensuing scuffle.

32. After Mr. Phillips was subdued and handcuffed, Officer Alsleben observed blood on Deputy Kester's face and believed the blood was caused by a punch or punches thrown by Mr. Phillips.

33. Officer Alsleben subsequently learned from Officer Kennedy that as a result of being struck in the face by Mr. Phillips, Kennedy had chipped a tooth requiring repair by a dentist.

34. Officer Kennedy's dental records reflect that he suffered chips to three front teeth.

35. Officer Kennedy also suffered a bruised eyelid as the result of being struck in the face by Mr. Phillips's elbow.

36. At no time during the struggle with Mr. Phillips did any of the Defendants strike, punch, or kick Mr. Phillips.

37. The extent of the physical force used by Defendants against Mr. Phillips was limited to that force necessary to subdue him, hold him down to prevent his escape, and pull his arms behind his back so that he could be handcuffed.

38. After Mr. Phillips was handcuffed and taken from the scene, Defendants observed a tooth on the ground belonging to Mr. Phillips.

39. In the back yard of 1942 Allen Street, Officer Alsleben found various items

discarded by Mr. Phillips, including a laptop computer, a shoe, and a brown jacket containing two crack pipes in the pocket.

40. Officer Tony Sube did not participate in Mr. Phillips's apprehension and arrest.

41. Officer Sube was assigned to transport Mr. Phillips to the hospital for medical attention.

42. After his arrest, Mr. Phillips was transported by Officer Sube to Sacred Heart Hospital, where he was provided with medical care at the Emergency Department and with dental care at the Dental Clinic.

43. While at the Emergency Department and Dental Clinic of Sacred Heart Hospital, Mr. Phillips admitted to Officer Sube that he had smoked crack cocaine prior to his arrest.

44. While at the Dental Clinic, Mr. Phillips repeatedly fell asleep during the course of his treatment.

45. Any injuries suffered by Mr. Phillips, and in particular the injuries to his mouth and his teeth, were caused either by his falling face first to the ground or by his struggling on the ground to avoid being handcuffed.

46. Mr. Phillips subsequently admitted to medical personnel and Officer Sube that he had sustained pre-existing injuries to his face as the result of a recent assault by a third person.

47. Officer Alsleben filed a criminal complaint against Mr. Phillips containing the

following charges: aggravated assault under 18 PA.C.S.A. § 2702(a)(2) (felony), against Deputy Kester and Officer Kennedy; simple assault under 18 PA.C.S.A. § 2701(a)(1) (misdemeanor) against Deputy Kester and Officer Kennedy; resisting arrest under 18 PA.C.S.A. § 5104 (misdemeanor); disorderly conduct under 18 PA.C.S.A. § 5503(a)(1) (misdemeanor); possession of drug paraphernalia under 35 P.S. § 780-113(a)(32) (misdemeanor); and defiant trespass under 18 PA.C.S.A. § 3503(b)(1)(iii) (summary offense).

48. At the time the criminal charges were filed, Officer Alsleben believed that Deputy Kester had been punched in the face by Mr. Phillips and that the blood on Deputy Kester's face was caused by that punch. This belief was reasonable under all the circumstances.

49. Prior to filing the criminal charges, Officer Alsleben had been informed by Officer Kennedy that Kennedy suffered a bruised eyelid and chipped a tooth as a result of being struck in the face by Mr. Phillips and that Officer Kennedy received dental treatment for the chipped tooth.

50. Officer Alsleben filed a summary citation for defiant trespass against Mr. Phillips because during the foot pursuit, Phillips ran through the back yards of several homes, including the back yard of 1942 Allen Street which was enclosed by a chain link fence.

51. Prior to filing the criminal complaint against Mr. Phillips, Officer Alsleben

obtained the approval of an Assistant District Attorney of Lehigh County, as required by the District Attorney's Office of Lehigh County.

52. As the result of the preliminary hearing held before a district judge, all criminal charges against Mr. Phillips were returned to court. This means that the Magistrate District Judge heard the charges and determined there was a prima facie against Mr. Phillips.

53. The District Attorney of Lehigh County subsequently filed a criminal information against Mr. Phillips based upon the charges which the District Judge had bound over for court. However, the District Attorney modified the aggravated assault charge and charged Mr. Phillips with aggravated assault against Officer Kennedy and Deputy Sheriff Kester under 18 Pa.C.S. Section 2702(a)(3) for intentionally or knowingly causing bodily harm to those officers.

54. After a pretrial hearing on Mr. Phillips's petition for writ of habeas corpus and motion to suppress evidence, the state trial court denied Mr. Phillips's motion to suppress based upon the unlawfulness of his arrest. This was, in fact, a finding that the arrest of Mr. Phillips was a lawful arrest.

55. The state trial court granted in part and denied in part Mr. Phillips's petition for writ of habeas corpus, dismissing both aggravated assault charges against Mr. Phillips and the simple assault charges as to Deputy Sheriff Kester on the basis that there was no evidence that Mr. Phillips had intentionally or knowingly, as opposed

to recklessly, struck Officer Kennedy or Deputy Kester. The state trial court denied the balance of Mr. Phillips's petition for writ of habeas corpus, refusing to dismiss the remaining charges against him.

56.   On September 6, 2007, Mr. Phillips was found guilty of resisting arrest and possession of drug paraphernalia following a jury trial in the Court of Common Pleas of Lehigh County, Pennsylvania, Case No. 5507 of 2006. He was found not guilty of simple assault and disorderly conduct and found not guilty by the state trial court as to the summary charge of defiant trespass.

57.   On October 30, 2007, Mr. Phillips was sentenced to a term of imprisonment of not less than nine months nor more than twenty-four months, with a fine of $500, in connection with his conviction for resisting arrest.  He was sentenced to probation for a period of twelve months to be served concurrently with the resisting arrest sentence in connection with the conviction for possession of drug paraphernalia.

58.   Mr. Phillips appealed his conviction to the Superior Court of Pennsylvania, and by decision dated June 22, 2009, Plaintiff's conviction was affirmed in case number 420 EDA 2008.

59.   No further appeals from the Superior Court's decision were filed.

60.   At the time of his arrest on October 23, 2006, Mr. Phillips was on parole under the supervision of the Pennsylvania Board of Probation and Parole as the result of a conviction for delivery of a controlled substance, cocaine.  In connection with this

felony conviction, Mr. Phillips had been sentenced on October 14, 2003, in the Court of Common Pleas of Lehigh County, Case No. 3373-2003, to incarceration for a period of not less than fifteen months nor more than forty-eight months.

61. As the result of Mr. Phillips's arrest and the filing of criminal charges by Officer Alsleben, the Pennsylvania Board of Probation and Parole placed an Order to Detain ("detainer") for forty-eight hours on Mr. Phillips.

62. The Pennsylvania Board of Probation and Parole subsequently placed a further detainer on Mr. Phillips until the criminal charges filed against him by Officer Alsleben were resolved.

63. Pursuant to a stipulation by the parties at trial, the State Parole Board would have placed a detainer against Mr. Phillips whether he was charged with aggravated assault and simple assault or with resisting arrest and possession of drug paraphernalia, the charges for which he was eventually convicted.

64. As a direct result of the detainer placed against him by the Pennsylvania Board of Probation and Parole, Mr. Phillips remained incarcerated until he was sentenced for resisting arrest and possession of drug paraphernalia stemming from his arrest by Officer Alsleben in this case.

65. As the result of his conviction in the case stemming from the arrest by Officer Alsleben, Mr. Phillips's parole on his previous drug conviction was revoked by the Pennsylvania Board of Probation and Parole.

66.    As the parties stipulated at trial, because of the detainer placed by the Pennsylvania Board of Probation and Parole as the result of Mr. Phillips's arrest, and because that detainer would have been placed against him whether he was arrested for aggravated assault or for resisting arrest or possession of drug paraphernalia, Mr. Phillips would have remained incarcerated after his October 23, 2006 arrest, no matter what amount of bail was set.

67.    Regardless of whether Officer Alsleben had probable cause to charge Mr. Phillips with aggravated assault against a law enforcement officer, he would have remained incarcerated as the result of his arrest for resisting arrest and possession of drug paraphernalia because of the detainer placed against him by the Pennsylvania Board of Probation and Parole.

68.    Mr. Phillips suffered no additional restrictions on his liberty as a result of being charged with aggravated assault by Officer Alsleben beyond those attributable to the prosecution for resisting arrest and possession of drug paraphernalia.

69.    The testimony of Mr. Phillips that he was kicked or punched in the face is not credible; no such complaints of being punched or kicked are reflected in his medical records or dental records from Sacred Heart Hospital where he was treated immediately after his arrest.

70.    Mr. Phillips's testimony that he ran from the police because he was "scared" by the way Officer Alsleben walked toward him and looked at him is not worthy of

belief; the fact that Mr. Phillips ran from Deputy Sheriff Kester, as well as from Officer Alsleben, suggests that he fled to avoid being arrested rather than out of fear of Officer Alsleben.

71.     It is more likely that Mr. Phillips ran from Alsleben and Kester because he wanted to avoid arrest and re-incarceration for a parole violation and arrest for possession of drug paraphernalia for the crack pipes contained in the pockets of his coat.

72.     Mr. Phillips's injuries are consistent with a struggle in which the arresting officers were compelled to use substantial force to overcome his resistance and are also consistent with pre-existing injuries suffered during a previous assault by a third party.

73.     In discrediting Mr. Phillips's testimony, the Court considers and gives some weight to his prior conviction for delivery of cocaine, a felony under Pennsylvania law.  See Federal Rule of Evidence 609(a); United States v. Davis, 235 F.R.D. 292, 296 (W.D.Pa. 2006) (Gibson, J.) ("[T]he Court agrees with the Government that prior convictions for drug trafficking and distribution bear on the Defendant's veracity to a certain extent, particularly in light of the nature of such crimes and how the person committing them may act in furtherance of such crimes by lying to maintain secrecy."); United States v. Womack, No. 97-72, 1998 WL 24355 at *2 (D. Del. Jan. 12, 1998) (Schwartz. S.J.) (observing that "some drug offenses are generally more covert or deceptive" than others, and finding that "possession

[with] intent to deliver cocaine would appear to have slightly greater impeachment value than other crimes"). See also United States v. Alexander, 48 F.3d 1477, 1488-89 (9th Cir. 1995) (district court properly admitted evidence of defendant's prior conviction for possession of rock cocaine for sale), *cert. denied*, 516 U.S. 878 (1995).

## CONCLUSIONS OF LAW

1. Mr. Phillips cannot use his Section 1983 claims to collaterally attack the facts underlying his prior conviction. Heck v. Humphrey, 512 U.S. 477, 486-87 (1994); Allen v. McCurry, 449 U.S. 90, 104 (1980); Williams v. Consovoy, 453 F.3d 173, 177 (3d Cir. 2006).

## A.    Claims Barred by Heck

1. This Court dismissed Mr. Phillips's unlawful arrest claim in ruling on his motion for summary judgment. As noted in the memorandum and order (Doc. No. 37, Mar. 12, 2009), this claim is barred under Heck, 512 U.S. at 486-87, because a favorable verdict on it would invalidate his conviction or sentence.

2. For the same reason, this Court dismissed Mr. Phillips's race discrimination claim in ruling on his motion for summary judgment. See id.

3. Although not dismissed in this Court's order denying Mr. Phillips's motion for

summary judgment, his claim that defendants fabricated evidence and otherwise testified falsely in connection with Mr. Phillips's arrest and criminal conviction is also barred by Heck.  See Banko v. Brooks, No. 06-946, 2006 WL 3227761 at *5 (W.D.Pa. Nov. 2, 2006) ("Because success in establishing that the Defendants conspired to falsely convict him, lying in the course of the criminal proceedings and committing perjury . . . would necessarily render [Plaintiff's] convictions or sentences invalid, [Heck] renders his claims non-cognizable in this civil rights action absent an invalidation of those convictions.").

**B.**     **Fourteenth Amendment Due Process under Section 1983**

1.     Mr. Phillips's substantive due process claims are improper under Section 1983 because any excessive force claim is properly brought under the Fourth Amendment rather than under the substantive due process clause of the Fourteenth Amendment.  Washington v. City of Philadelphia, No. 87-7000, 1990 WL 107651 at *3 (E.D.Pa. July 26, 1990) (citing Graham v. Connor, 490 U.S. 386 (1989)).

2.     Mr. Phillips's procedural due process claim constitutes an improper collateral attack upon his conviction under Heck because Plaintiff was tried and convicted in state court and his conviction was affirmed.  Any procedural due process claim should have been raised in that prosecution.  Heck, *supra*; Blackwell v. Vaughn, No. 97-CV-3467, 2001 WL 872777, at *4 n.8 (E.D. Pa. July 3, 2001).

**C.** **First Amendment under Section 1983**

1.  Mr. Phillips's unspecified First Amendment claim is denied because he has

    failed to adduce any evidence that implicates any rights under the First

    Amendment.

**D.** **Eighth Amendment Cruel and Unusual Punishment under Section 1983**

1.  Mr. Phillips's claims of cruel and unusual punishment under the Eighth

    Amendment are improper because use of force claims against an arrestee, as

    opposed to persons convicted of a crime, are governed by the Fourth Amendment,

    rather than the Eighth Amendment. Graham, 490 U.S. at 398-99 (1989); Whitley

    v. Albers, 475 U.S. 312, 318 (1986).

**E.** **Intentional Infliction of Emotional Distress under Pennsylvania Law**

1.  Pennsylvania law "requires that competent medical evidence support a claim of

    alleged intentional infliction of emotional distress." Bougher v. Univ. of

    Pittsburgh, 882 F.2d 74, 80 (3d Cir. 1989). Because Mr. Phillips has not produced

    the required expert medical evidence of emotional distress as required to support

    this claim, it must be denied.

**F.      Malicious Prosecution under Section 1983**

1.      In order to establish a malicious prosecution claim under Section 1983, a plaintiff

must establish that: (1) the defendant initiated a criminal proceeding; (2) the

criminal proceeding ended in his favor; (3) the defendant initiated the proceeding

without probable cause; (4) the defendant acted maliciously or for a purpose other

than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of

liberty consistent with the concept of a seizure as a consequence of a legal

proceeding.  Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003).

2.      Mr. Phillips established that Defendant Anthony Alsleben initiated criminal

proceedings against him and that some but not all of the criminal charges initiated

against Mr. Phillips ended in his favor.  However, Mr. Phillips failed to establish

the remaining elements of malicious prosecution.

3.      Mr. Phillips failed to establish that the charges which terminated in his favor were

initiated without probable cause.

4.      Probable cause does not require the same type of specific evidence of each

element of the offense as would be needed to support a conviction. Wright v. City

of Philadelphia, 409 F.3d 595, 602 (3d Cir. 2005) (quoting Adams v. Williams,

407 U.S. 143, 149 (1972)). The evidentiary standard for probable cause is

significantly lower than the standard required for conviction.  Id.

5.      The probable cause inquiry looks to the totality of the circumstances; the standard

does not require that officers correctly resolve conflicting evidence or that their determinations of credibility, were, in retrospect, accurate. <u>Wright</u>, 409 F.3d at 603.

6.     Under Pennsylvania law, a person is guilty of aggravated assault if he:

> (2) attempts to cause or intentionally, knowingly or recklessly causes serious bodily injury to any of the officers, agents, employees or other persons enumerated in subsection (c) or to an employee of an agency, company or other entity engaged in public transportation, while in the performance of duty;
> (3) attempts to cause or intentionally or knowingly causes bodily injury to any of the officers, agents, employees or other persons enumerated in subsection (c), in the performance of duty….

18 PA.C.S.A. § 2702(a).

7.     Officer Alsleben observed Mr. Phillips swinging his arms with closed fists and repeatedly hitting Deputy Kester in the arm to break Deputy Kester's grip on Phillips's arm. Officer Alsleben knew that as a result of those hits, Deputy Kester sustained bruises to his arm with concomitant soreness and pain. Based on his direct observations and knowledge, Officer Alsleben had sufficient probable cause to establish that Mr. Phillips caused bodily injury to Deputy Sheriff Kester in the performance of his duties within the meaning of 18 PA.C.S.A. §2702(a)(3).

8.     Because Officer Kennedy was struck in the face at least twice by Mr. Phillips's elbow while Mr. Phillips was attempting to punch Deputy Kester and because Officer Kennedy required treatment for a chipped tooth, Officer Alsleben had sufficient probable cause to charge Mr. Phillips with aggravated assault against

Officer Kennedy under 18 Pa.C.S. §2702(a)(3). Under the doctrine of transferred intent, Phillips's intentional act in attempting to punch Deputy Kester was sufficient to establish his intent to strike Officer Kennedy. See 18 PA.C.S.A. § 303(b)(1); Commonwealth v. Thompson, 559 Pa. 229, 739 A.2d 1023, 1029-1030 (1999), *cert. denied,* 531 U.S. 829 (2000).

9.  Under Pennsylvania law, a person is guilty of simple assault if he "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another[.]" 18 PA.C.S.A. § 2701(a)(1).

10. Officer Alsleben had sufficient probable cause to charge Mr. Phillips with simple assault against Deputy Kester because Mr. Phillips pulled Deputy Kester over the hood of a car, swung his arms with closed fists in an attempt to punch Kester and break his grasp, and repeatedly punched Kester in the arm causing bruises and soreness. As such, Mr. Phillips's conduct was intentional, knowing, or at least reckless in causing or attempting to cause bodily injury to Deputy Kester. The punching of Deputy Kester by Mr. Phillips could have been a sufficient factual basis for a charge of aggravated assault under 18 PA.C.S.A. § 2702(a)(3).

11. Officer Alsleben had sufficient probable cause to charge Mr. Phillips with simple assault against Officer Kennedy because Officer Kennedy was struck in the face at least twice by Phillips's elbow, because Phillips repeatedly threw elbows, flailed his arms with closed fists, and kicked at the officers in an attempt to escape, and

because Kennedy suffered chipped teeth requiring repair by a dentist. Mr. Phillips's conduct was intentional, knowing, or at least reckless in causing or attempting to cause bodily injury to Officer Kennedy.

12. Under the doctrine of transferred intent, Officer Alsleben had sufficient probable cause to charge Mr. Phillips with simple assault when Mr. Phillips attempted to strike Deputy Kester with a closed fist but struck Officer Kennedy in the face with an elbow instead, causing a bruised eyelid and a chipped tooth.

13. Under Pennsylvania law, a person is guilty of defiant trespass if "knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by . . . fencing or other enclosure manifestly designed to exclude intruders[.]" 18 PA.C.S.A. § 3503(b)(1)(iii).

14. Officer Alsleben had sufficient probable cause to charge Mr. Phillips with defiant trespass as a summary offense because Alsleben saw Mr. Phillips go through the back yards of several homes during the foot pursuit, including one yard that was enclosed by a chain link fence.

15. Under Pennsylvania law, a person is guilty of disorderly conduct, "if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he engages in fighting or threatening, or in violent or tumultuous behavior[.]" 18 PA.C.S.A. § 5503(a)(1).

16. Officer Alsleben had sufficient probable cause to charge Plaintiff with disorderly

conduct because Mr. Phillips pulled Deputy Kester over the hood of a car, swung closed fists in an attempt to punch Kester, caused the officers to fall to the ground by resisting arrest and attempting to break free from the arresting officers, struck Officer Kennedy in the face with an elbow, and threw elbows and kicked while on the ground in an attempt to escape arrest.

17. Although the fact-finder may infer malice from the absence of probable cause, Lippay v. Christos, 996 F.2d 1490, 1503 (3d Cir. 1993), such an inference is not required. McKenna v. City of Philadelphia, No. 07-110, 2008 WL 4435939 (E.D.Pa. Sep. 30, 2008).

18. Mr. Phillips failed to establish that any of the facts contained in Officer Alsleben's affidavit of probable cause in support of the criminal complaint against Plaintiff were untrue or willfully false.

19. Officer Alsleben's securing the approval of an Assistant District Attorney before filing the criminal complaint against Mr. Phillips is further evidence of Officer Alsleben's lack of malice in filing such charges.

20. Mr. Phillips has failed to present any evidence of a malicious purpose for the filing of additional charges against him by Officer Alsleben.

21. In support of his malicious prosecution claim, Mr. Phillips also failed to establish that he suffered additional or unnecessary incarceration or other harm as the result of Officer Alsleben's filing of the charges of aggravated assault, simple assault,

disorderly conduct or the summary offense of defiant trespass.

22. Even assuming Officer Alsleben lacked probable cause to charge Mr. Phillips with the charges ultimately terminated in his favor, Mr. Phillips failed to establish that he suffered any harm as the result of the filing of such additional charges beyond those for which he was ultimately convicted. Specifically, Mr. Phillips failed to establish that prosecution for the charges for which there might not have been probable cause resulted in additional restrictions on his liberty beyond those attributable to prosecution for resisting arrest and possession of drug paraphernalia, for which there was probable cause. See Johnson v. Knorr, 477 F.3d 75, 85 (3d Cir. 2007).

23. Mr. Phillips remained incarcerated while his criminal charges were pending pursuant to a detainer placed against him by the Pennsylvania Board of Probation and Parole, and the detainer would have been placed against him by the Pennsylvania Board of Probation and Parole even if Mr. Phillips had been arrested and charged only with resisting arrest and possession of drug paraphernalia. Therefore, there is no evidence that he suffered any additional restrictions on his liberty by virtue of being charged with simple assault, aggravated assault, disorderly conduct or criminal trespass. Mr. Phillips failed to establish that he suffered any harm as the result of being charged with crimes in addition to those crimes for which he was convicted.

24. Alternatively, Officer Alsleben is entitled to qualified immunity as to Mr. Phillips's malicious prosecution claims because it would not have been clear to a reasonable police officer in Officer Alsleben's position that there was no probable cause to charge Mr. Phillips with aggravated assault, simple assault, disorderly conduct, and criminal trespass. See Gilles v. Davis, 427 F.3d 197, 205 (3d Cir. 2005) ("[A] police officer is entitled to qualified immunity unless it would have been clear to a reasonable officer there was no probable cause to arrest.").

25. Officer Alsleben's judgment that he had probable cause to charge Mr. Phillips with aggravated assault, simple assault, disorderly conduct and criminal trespass was not plainly incompetent, particularly in light of the approval of said charges by the Office of the District Attorney. Id. at 207 (citing Hunter v. Bryant, 502 U.S. 224, 229 (1991)).

## G.  Excessive Force under Section 1983

1. Officer Tony Sube did not participate in Mr. Phillips's apprehension and had no reasonable opportunity to intervene. Officer Sube's only involvement in this episode was to transport Mr. Phillips to the hospital and dental clinic for treatment of his injuries and remain with him during his treatment. Therefore, and consistent with my ruling at trial, Officer Sube cannot be held liable for any claim of excessive force asserted by Mr. Phillips.

2.	In light of Mr. Phillips's conviction for resisting arrest, the remaining Defendants were entitled to use substantial force in overcoming his resistance.  See Nelson v. Jashurek, 109 F.3d 142, 145-46 (3d Cir. 1997) (finding that plaintiff's conviction for resisting arrest "establishes that [the defendant officer] was privileged to use substantial force.").

3.	Based upon the totality of the circumstances, the officers' use of force was objectively reasonable in light of the circumstances of the arrest and particularly in light of Mr. Phillips's actively resisting arrest and his attempts to escape.  See Graham, 490 U.S. at 397; Kopec v. Tate, 361 F.3d 772, 776-77 (3d Cir. 2004) ("Factors to consider in making a determination of reasonableness include . . . whether the suspect poses an immediate threat to the safety of the officers or others, and whether he actively is resisting arrest or attempting to evade arrest by flight.").

4.	To the extent that Mr. Phillips sustained any injuries during the course of his arrest, such injuries were the direct result of his violently struggling with the arresting officers and his falling to the ground face-first with the officers holding on to his arms.

5.	Some of the injuries claimed by Mr. Phillips to have been suffered during his arrest appeared to have been pre-existing and causally unrelated to this incident.

6.	Mr. Phillips failed to present any medical evidence linking his alleged injuries to

the conduct of Defendants.

7.    Mr. Phillips failed to establish by a fair preponderance of the evidence that any of
      his injuries were legally caused by the use of excessive force by any of the
      Defendants.

**H.    Conspiracy under Section 1983**

1.    To prove a civil conspiracy under Section 1983, Mr. Phillips must prove: (1) an
      agreement of two or more conspirators, (2) to deprive him of a constitutional right,
      in this case his right under the Fourth Amendment not to be subjected to excessive
      force, (3) under color of law.  Gale v. Storti, 608 F. Supp. 2d 629, 635 (E.D.Pa.
      2009) (citing Pfannstiel v. City of Marion, 918 F.2d 1178, 1187 (5th Cir. 1990)).

2.    It is not enough for a plaintiff to prove that the end result of the parties'
      independent conduct caused him harm.  Mr. Phillips must therefore prove the
      alleged conspirators reached an understanding, or had a "meeting of the minds" to
      violate his rights.  Startzell v. City of Philadelphia, 533 F.3d 183, 205 (3d Cir.
      2008).

3.    To prove a civil conspiracy under Section 1983, Mr. Phillips must also prove an
      underlying violation of his constitutional rights.  Glass v. City of Philadelphia, 455
      F. Supp. 2d 302, 359-60 (E.D.Pa. 2006).

4.    Mr. Phillips failed to establish an underlying violation of his constitutional rights

sufficient to support a civil conspiracy.

5.   Mr. Phillips offered insufficient evidence to establish that Defendants had a

meeting of the minds and agreement to violate his constitutional rights.


## **CONCLUSION**

For the reasons set forth above, judgment will be entered in favor of the defendants

and against Errick Phillips.  An appropriate order follows.


BY THE COURT:


/s/ *Lawrence F. Stengel*
LAWRENCE F. STENGEL, J.